CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 2 9 2017

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MICHAEL G. MCCLARY, JR., et al., | ) |
| Plaintiffs, | ) Civil Action No. 7:17CV00098 |
| v. | ) **MEMORANDUM OPINION** |
| GREYHOUND LINES, INC., | ) By: Hon. Glen E. Conrad |
| | ) United States District Judge |
| Defendant. | ) |

Michael and Anna McClary, individually and on behalf of their minor son, I. McClary, filed this action in the Circuit Court of Wythe County against Greyhound Lines, Inc. ("Greyhound"). Greyhound removed the action to this court on the basis of diversity jurisdiction, and then moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The case is presently before the court on Greyhound's renewed motion to dismiss, which seeks dismissal of the amended complaint filed by the plaintiffs. The court held a hearing on the motion on August 17, 2017. For the reasons that follow, the court will grant Greyhound's motion.

## Background

The following facts, taken from the plaintiffs' amended complaint, are accepted as true for purposes of the defendant's motion to dismiss. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.").

On the morning of April 8, 2016, Mrs. McClary discovered that her thirteen-year-old son, I. McClary, was not at the family's residence. The McClary family lives approximately two miles from the Greyhound bus station in Max Meadows, Virginia. Unbeknownst to his parents, I.

McClary walked to the station at approximately 3:15 a.m. and purchased a bus ticket to Brooklyn, New York. He boarded the bus an hour later carrying his father's pistol.

Prior to selling the bus ticket, the attendant asked I. McClary whether someone had come with him to the bus station and if he had driven there. I. McClary answered both questions in the negative. Despite his answers to the attendant's questions and his "obvious appearance," the attendant sold him the ticket without requiring him to present an unaccompanied minor form, as required by company policy. Am. Compl. ¶ 11, ECF No. 11.

After learning that their son had boarded a bus to New York, Mr. and Mrs. McClary notified the Wythe County Sheriff's Office ("Sheriff's Office"), and deputies went to the bus station to speak to the attendant on duty. Although the attendant admitted that he had sold I. McClary a ticket to Brooklyn, New York, he refused to provide any additional information, such as bus stops or numbers.

Mr. McClary subsequently realized that his pistol was missing from his nightstand. He immediately notified the Sheriff's Office that his son might be carrying a loaded pistol. The Sheriff's Office worked all day trying to obtain information from Greyhound. However, Greyhound refused to give Mr. and Mrs. McClary or the Sheriff's Office information regarding bus routes or stops. The company also refused to contact its own drivers to assist in locating I. McClary.

Mr. McClary drove to New York, hoping to arrive before his son. While en route, the New York City Police Department ("NYPD") joined in the efforts to locate I. McClary. Around 7:30 p.m. that same day, the Sheriff's Office advised Mr. and Mrs. McClary that NYPD officers had located their son at a bus station in Manhattan. Because he was carrying a loaded firearm, I. McClary was arrested and immediately placed in the custody of the NYPD.

The plaintiffs claim that Greyhound's actions caused them to suffer "extreme stress." Id. ¶¶ 47, 64, 81. The stress "manifest[ed] . . . in the form of physical shaking, interrupted sleep, [and] panic attacks that have caused them to alter and change [their] eating and sleeping habits." Id. Additionally, Mr. McClary's blood pressure has become "elevated and erratic at times, which was not an issue before this incident." Id. ¶ 47.

## Procedural History

The plaintiffs filed suit against Greyhound in February of 2017. The original complaint, filed in state court, contained three counts labeled as claims for "negligence/emotional distress." See Compl. 3-4, 6, ECF 1-1. Upon removing the case to this court, Greyhound moved to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. On May 19, 2017, the parties appeared before the court for a hearing on Greyhound's motion. At the conclusion of the hearing, the court took the motion under advisement and granted the plaintiffs leave to file an amended complaint.

On June 1, 2017, the plaintiffs filed an amended complaint, asserting claims of "negligent infliction of emotional distress" on behalf of each plaintiff. See Am. Compl. ¶¶ 38, 55, 72 ("This is an action for negligent infliction of emotional distress.") In response, Greyhound renewed its motion to dismiss. Greyhound's motion has been fully briefed and is ripe for review.

## Standard of Review

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). Accordingly, the court's evaluation is "generally limited to a review of the allegations of the complaint itself." Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165-66 (4th Cir. 2016). "While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide

3

the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation and internal quotation marks omitted). To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face,'" meaning that it must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

## Discussion

Because this federal action is based upon diversity of citizenship, the court must apply the substantive law of the forum state, including its choice of law rules. Limbach Co., LLC v. Zurich Am. Ins. Co., 396 F.3d 358, 361 (4th Cir. 2005). The parties agree that Virginia law governs the claims of negligent infliction of emotional distress asserted by the plaintiffs.

In Virginia, claims for emotional distress, whether based on intentional or negligent conduct, are not favored in the law. See SuperValu, Inc. v. Johnson, 666 S.E.2d 335, 343 (Va. 2008); Ruth v. Fletcher, 377 S.E.2d 412, 415 (Va. 1989); Bowles v. May, 166 S.E. 550, 557 (Va. 1932). To prevail on a claim of intentional infliction of emotional distress, a plaintiff must prove, among other elements, that the wrongdoer inflicted emotional distress "so severe that no reasonable person could be expected to endure it." Russo v. White, 400 S.E.2d 160, 163 (Va. 1991). "The standard for negligent infliction of emotional distress is even more rigorous." Michael v. Sentara Health Sys., 939 F. Supp. 1220, 1234 (E.D. Va. 1996); see also Earley v. Marion, 540 F. Supp. 2d 680, 690 (W.D. Va. 2008) (observing that Virginia courts hold litigants to an especially rigorous standard for negligent infliction of emotional distress claims). To survive a motion to dismiss in a case such as this, plaintiffs must plead sufficient facts to establish that they

suffered a "physical injury" that was "the natural result of fright or shock proximately caused by the defendant's negligence."[1] Myseros v. Sissler, 387 S.E.2d 463, 464 (Va. 1990) (citing Hughes v. Moore, 197 S.E.2d 214, 219 (Va. 1973)). More specifically, a successful claim requires "evidence of 'symptoms' or 'manifestations' of <u>physical injury</u>, not merely of an underlying emotional disturbance." Id. (emphasis in original) (finding that symptoms accompanying a plaintiff's stress and anxiety, which included dizziness, nausea, difficulty sleeping and breathing, constriction of the coronary vessels, two episodes of chest pain, hypertension, weight loss, and change in heart function, were manifestations of an underlying emotional disturbance, rather than of physical injury); see also Klar v. Fannie Mae, No. 3:13-cv-00462-JAG, 2014 WL 412533, 2014 U.S. Dist. LEXIS 13166, at *16 (E.D. Va. Feb. 3, 2014) ("Myseros forbids recovery where the plaintiff complains only of emotional harm, which manifests itself physically.").

Applying these principles, the court concludes that the plaintiffs have failed to state a claim upon which relief may be granted. As indicated above, the plaintiffs allege that they each suffered "extreme stress" as a result of Greyhound's actions, which "manifest[ed]" in the form of physical shaking, interrupted sleep, panic attacks, and altered eating habits. Am. Compl. ¶¶ 47, 4, 81. They further allege that Mr. McClary's blood pressure has, at times, been elevated and erratic since the incident. See id. ¶ 47. The court agrees with Greyhound that the conditions described by the plaintiffs do not satisfy the physical injury requirement applicable to negligent infliction of emotional distress claims. Such ailments are more properly classified as symptoms of an underlying emotional disturbance (i.e., stress or anxiety), rather than a physical injury. See

---

[1] The plaintiffs argue that it is not always necessary to establish a physical injury when asserting a claim for negligent infliction of emotional distress. To support their argument, the plaintiffs point to Naccash v. Burger, 290 S.E.2d 825, 831 (Va. 1982), a "wrongful birth action" in which the Supreme Court of Virginia recognized an exception to the physical injury requirement. The Supreme Court has since made clear, however, that "Naccash is confined to its particular facts." Myseros v. Sissler, 387 S.E.2d 464, 464 n.2 (Va. 1990); accord Bulala v. Boyd, 389 S.E.2d 670, 674 n.1 (Va. 1990).

5

Myseros, 387 S.E.2d at 464; see also Earley, 540 F. Supp. 2d at 690 (holding that plaintiff's alleged weight loss of ten pounds resulting from increased anxiety did "not constitute a physical injury, so much as a manifestation of emotional disturbance"); King v. City of Chesapeake, 478 F. Supp. 2d 871, 874 (E.D. Va. 2007) (holding that physical manifestations of stress, including headaches, stomach cramps, facial pain, and acute insomnia, did not support a claim for negligent infliction of emotional distress); Rollins v. Consol. Bank & Trust Co., 54 Va. Cir. 147, 152 (Va. Cir. Ct. 2000) (holding that an onset of elevated blood pressure did not satisfy the physical injury requirement). Consequently, under Myseros, the plaintiffs' allegations are insufficient to state plausible claims for negligent infliction of emotional distress.[2]

## Conclusion

For the reasons stated, the court will grant Greyhound's motion to dismiss. The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This 29th day of August, 2017.

_____
United States District Judge

---

[2] To the extent the amended complaint could be construed to assert claims for intentional, rather than negligent, infliction of emotional distress, the plaintiffs' allegations fare no better. Succinctly stated, the plaintiffs have not alleged facts sufficient to show that they suffered the degree of emotional distress required to prevail on such claim. See Harris v. Kreutzer, 624 S.E.2d 24, 34 (Va. 2006) (holding that the plaintiff's allegations of "severe psychological trauma and mental anguish affecting her mental and physical well-being," with symptoms including "nightmares, difficulty sleeping, extreme loss of self-esteem and depression, requiring additional psychological treatment and counseling," failed to describe the "type of extreme emotional distress that is so severe that no reasonable person could be expected to endure it") (citing Russo, 400 S.E.2d at 163); see also Gray v. Home Depot, No. 3:14cv488, 2015 WL 224989, 2015 U.S. Dist. LEXIS 5115, at *12 (E.D. Va. Jan. 14, 2015) (holding that allegations of embarrassment, back spasms, extreme high blood pressure, and depression "amount[ed] only to an assertion of run-of-the-mill physical ailments and stress, which, under Virginia law, are not enough to support a claim of intentional infliction of emotional distress"); Long v. Teradata Corp., No. 1:12cv787, 2012 WL 3947811, 2012 U.S. Dist. LEXIS 128586, at *15 (E.D. Va. Sept. 10, 2012) (holding that the plaintiff's allegations of hypertension, stress-related insomnia, depression, and anorexia were insufficient to establish the requisite severity of distress).

6